The next argument is number 20-37-91, Mezgar v. U.A. Plumbers and Steamfitters. Ms. Pero. Thank you, Judge. May it please the court. No one can dispute that the central purpose of ERISA is to protect employees' justified expectations as to receiving the benefits promised to them by their employers. And ERISA protects these benefits by ensuring that participants who fulfill conditions required under the terms of their plan to receive the benefit provided for under the terms of the plan will actually receive that benefit. Crucial to that objective are the anti-cutback provisions under ERISA, which prohibit a plan from making any changes that serve to reduce or eliminate those accrued benefits. So to prevent a plan from pulling the rug out from underneath the participant's feet, so to speak. In order to determine what benefits, if any, accrued and are protected, we have to look to the terms of the plan in effect at the time that the participants left covered employment. Here, the relevant plan provides a number of different benefits, but the one that's relevant to my plaintiffs is the special early retirement benefit. That provided that anyone retiring after June 1st of 98 at the age of 55 years and with at least 30 years of service credit would be entitled to a monthly pension as of the date that he made application for that pension. The plan further provided that participants could work in certain non-disqualifying employment with contributing employers while receiving their pension benefits and without subjecting those pension benefits to suspension under the suspension provisions of the plan. So at various times between 2002 and 2009, each of my seven plaintiffs, excuse me, each of my seven plaintiffs fulfilled the conditions for the special early retirement. They turned 55, they had at least 30 years of service credit, they made an application for the benefit. And then each of those gentlemen also returned to work in non-disqualifying employment with contributing employers. And they did that according to the terms of the plan and according to the actual verbal assurances from the plan administrator and in some cases from various trustees. Now this practice continues- Well, an anti-cutback claim requires an amendment, right? And you said in Kirkendall versus Halliburton that an amendment contemplates a change in the actual terms of the plan. And that's not what you have here, right? It's a reinterpretation. So could you speak to that? Well, sure, Judge. And I think that first to respond to this court's decision in Kirkendall, the court never reached having to determine whether or not an informal amendment could be an amendment or reinterpretation could be an amendment because it just wasn't at issue. They didn't need to get there. What they did do in Kirkendall though was cite the treasury regulations which specifically say that a plan that permits an employer- Can I just pause you there on Kirkendall? So we said, quote, even broadly interpreted the word amendment contemplates the actual terms of the plan changed in some way. And I hear your argument to be that that was dicta. Is that a fair characterization of what you're saying? Because I didn't see your argument in the briefs about that. No, and it wasn't argued in the briefs, Judge, for a couple of reasons. One, because we have an actual amendment here and the amendment added terms to the plan and took away terms to the plan. So first, it would be my position that Kirkendall is not applicable here. Second, Kirkendall does not foreclose a reinterpretation as consisting or constituting an amendment for purposes of anti-cutback. The court just never got there. And when they were citing the treasury regs, the treasury regs specifically provide that an exercise of discretion that would deny a protected benefit is a violation of ERISA's anti-cutback provisions. And there's a slew of case law out of the Third Circuit and the Sixth Circuit that say the same thing and that we've cited in our brief, so I won't rehash it. But I, you know, so the, I mean, the first response is that we have an amendment here. We have an actual amendment. I thought that the reason for the change was a reinterpretation of the word retire. So what's the formal amendment that you think was made? Well, in the original plan, Your Honor, the only requirements to be able to commence a distribution of the special early retirement were that an individual was 55, had at least 30 years of service credit and made an application. That was it. The only other conditions on receipt of that benefit went to whether or not that participant would then engage in what might be disqualifying employment. Once an individual was 55, had 30 years of service and made an application, he had a vested, fully accrued, non-forfeitable right to receive those pension monies except for any other conditions set forth in the terms of the plan that might suspend those benefits. But I thought what happened here was they said, the word retire must be given a meaning and we give it the meaning similar to the IRS interpretation in a tax provision of somewhat related. So why is that a change other than an interpretation of the word retire? Well, it's a change, Your Honor, because the word retire was never defined in the original plan. And it was interpreted originally in line with the plain language of the plan terms, which are what control here. Plan terms govern when benefits are distributed, not the tax code. It's the plan terms under Title I of ERISA, first of all. Second of all, the IRS, the defendants are utterly wrong on what the IRS says constitutes a retirement. The IRS revenue rulings that the defendants rely on are related to a single employer defined contribution, like 401k, 403b plan, not a multi-employer collectively bargained defined benefit plan. They are two completely different animals. In a defined contribution plan for a single employer, there are non-retirement distributable events. I see that my time is expiring. Can I continue? There are non-retirement distributable events, such as when Karen leaves her job at NOCO, can she roll over her 401k and take it with her? It's not a retirement. Karen hasn't met the age and service requirements under the plan in order to make a distribution. So the IRS has to look at, has there been a separation of employment sufficient for this non-retirement distribution? That's not an issue here. We have a distributable event. The distributable event is the satisfaction of the pre-amendment conditions for the right to a benefit, which is age, service, and application. That's it. That benefit became distributable upon meeting those conditions and then continued to be distributable until and unless the suspension provisions would be triggered under the plan. And because these individuals were engaged in non-disqualifying employment, there were no suspension provisions triggered. In Heinz, the Supreme Court, this is the precedential binding case that controls this case, because the facts are the same. And while the defendants want to repackage it and do gymnastics in a desperate attempt to get away from Heinz, Heinz says that a participant who has a pre-retirement expectation of being able to supplement their retirement benefit with post-retirement income, that's an accrued benefit that cannot be taken away. And the plan terms, whether they were lawful under the tax code or not, which they were, but whether they were lawful under the tax code or not, provided these guys with a pre-retirement expectation of post-retirement employment to supplement their retirement benefit. And had they not had that understanding and the assurances of the defendants, my guys would have stayed in covered employment. They would have continued working in service. That's what in-service means, staying in covered employment. The anti-cutback provision, 204G of ERISA specifically says that accrued benefits are those attributable to service. So they would have stayed in service and continued earning additional pension benefits over the next 10 years, or for as long as they were able, from 55 to 65 and ended up with a pension, $1,000 a month greater than what they had when they took the special early retirement. But as planned- I'm sorry, can I, sorry. I just, one of the things I'm trying to understand is whether it's an amendment or not, whether it's a cutback or not, all depends on what it meant before. And we have a sort of ex-post reinterpretation that says, oh, this is what it meant before. This is what it required to retire. And it's done ostensibly to ensure that the policy, the plan is internally consistent because it says it comports with the Internal Revenue Code. And you're arguing that the understanding of the Internal Revenue Code that drives that in the first place is just wrong. Do we review that aspect of the trustees as they're interpreting the plan or reinterpreting the plan as the case may be? De Novo, because it's a legal question, if they got it wrong on what the code meant, that casts doubt on the validity of the reinterpretation or do we afford them deference and say, if it's not totally clear what the Internal Revenue Code provides, then it's not arbitrary for them to interpret their policy to conform to what they reasonably, but maybe wrongly think it requires. Judge, it has consistently been the plaintiff's position that this is a legal conclusion that the fund reached. It was not based on a rereading of the terms of the plan. It was based on some Joe Schmo at a conference claiming that separating from covered employment wasn't enough to constitute a retirement. And maybe it's not, if you haven't met the age and service requirements under the plan. When the Supreme Court in a bunch of cases of which I think the most recent is Conkright versus Frommer said, quote, a plan administrator's interpretation will not be disturbed if reasonable, close quote. You're saying that doesn't apply here? Well, and for a couple of reasons, this second so-called interpretation, which is amendment, it changed the terms of the plan. It changed the terms of the plan so much that it affected what the plaintiff's benefits looked like before the plan change and then after the plan change. Are you saying that if we conclude that this was a reinterpretation as opposed to what you would call a more radical change, that you lose? Oh, absolutely not, Judge. There's a compelling case law that reinterpretations that are arbitrary and capricious because this interpretation, whether it's given deference or not, which I don't think it is because it's strictly, it turns on an issue of law. And it's not an issue of law where the IRS has come out and said, this is what we're saying. It's the defendant saying what they think the IRS is saying and they just have it completely wrong. But they're not owed deference for making legal conclusions. Even the IRS in their revenue rulings isn't afforded deference under Chevron. I mean, so certainly the defendant's claim about what the IRS says is not afforded deference. It's a de novo review. And the second way for them to win- Did you argue in your papers that the original interpretation was entitled to deference? Yes, because the original interpretation was an interpretation of the terms of the plan. The original interpretation granting benefits to the plaintiffs was looking at the plan and saying they're 55, they have 30 years of service credit, they applied. Oh, and we can continue paying them because they're not working in disqualifying employment. Boom, that's it. But the reinterpretation is not like that, that it's a, I don't understand the distinction in terms of why you're arguing. For a couple of reasons. So we cited, I believe it's a District of Michigan case, Red, and then the Cotillion case out of the Third Circuit, where their analysis was to look at the original decision. And if the original decision was based on a permissible reading of the plan terms, then that decision was considered reasonable and the reinterpretation was considered arbitrary and capricious. And the same is true here. I mean, the defendants did a total about face based on a conference they attended and said, oh, now you weren't, you didn't retire under the terms of the plan. You had to have a permanent intention to never return to work for a contributing employer ever again. The plan terms don't say that. They never said that. So they amended the plan terms to say that. That's the change. Before, you never needed to have, and then the law doesn't require a permanent intention to never return to work again. The law, both ERISA and the tax code contemplate post-retirement work. And what they, those provisions regard suspension of benefits. And they say, yeah, you can suspend benefits and it won't be a forfeiture in violation of ERISA if it's in the plan terms. They don't say that an employee's retirement will be null and void if he intends on returning to work. And Hines specifically said that a pre-retirement expectation of being able to return to work post-retirement is a protected benefit. So for the defendants to stand here and say there was no amendment, and this is just a reinterpretation and we're entitled to deference, it's just utter nonsense. Under the terms of the original plan, they were entitled to special early retirement. That is how the plan was administered for decades. For decades, that's how the plan was administered because it's the only logical reading of the plan terms. For the defendants to then, I'm sorry. Thank you. You're well over your time, but you've reserved a couple of minutes for rebuttal. So we'll hear from Atheline next. Mr. Smith. Thank you, Your Honor. I have three points I want to emphasize this morning, but I want to clarify one point that's been raised about a formal amendment. There was a written amendment, but that was made after the decision was made. And it was a clarifying amendment to make it clear that one could not do what the trustees have permitted to happen, which is people retire early and continue to work. That amendment was made in anticipation of the application to the Internal Revenue Service pursuant to its VCP program. And can I ask a question about that? Yes. So you have, whether we call it an amendment or not, is of course the conclusion. So I'm scared to use language in the question, but the argument is, even though we weren't treating it that way, this plan always had this requirement. We just failed to recognize it. And what's driving that is a new belief that the Internal Revenue Code would be incompatible with your prior understanding of the plan. Does it matter whether that belief was dead wrong? And do we review that belief with any sort of deference to the trustees as to their interpretation of an Internal Revenue Code, which is then drives their interpretation of their plan? Or is that a de novo question? Well, every court that has reviewed the situation with the exception of Chavez, which was cited in our brief, which said that the rule was clearly required that the trustees not permit these benefits. All the other courts have reviewed it, including Meakin in the Ninth Circuit, that it's a question of whether the trustees acted arbitrarily and capriciously in reliance upon these various determinations of the Internal Revenue Service. And in fact, here one might say, one might look at it as to whether or not the trustees are acting arbitrarily and capriciously by complying with the compliance agreement with the IRS in connection with the VCP. The VCP compliance statement, which is at page A541 through 563 in the record, particularly at A555 said, they in essence confirmed the violation by saying you can fix it by number one, ceasing the payments. Number two, assuring that it would not happen again. And number three, reporting to the IRS within 150 days that had taken the action required or face losing your tax exempt status. A reversal here would clearly put the trustees in an untenable position. The court reversal would say, you've got to pay these benefits. While the IRS says you can't pay the benefits under the threat of lost tax exempt status. Now, if that happens, there would be far less money available in the fund for benefits for everybody, including the plaintiffs. Because all the monies in the fund would be taxed going all the way back from when it went in. The money, the contributions when they were made to the fund would now be taxable retroactively to the participants. And the money coming out would be taxed as income. So you could see this puts the fund in a terrible position. I'm not as familiar with this realm. I would have imagined that the IRS has robust programs for working with funds to ensure that the people that are protected by the funds aren't gonna suffer those kinds of detriments on the basis of these kinds of mistakes. Am I wrong about that? You are absolutely correct that there is a program and that's the program that the trustees pursued when they realized they had made a mistake. Which is to make an application to the IRS under this voluntary compliance program, which permits trustees that pay a nominal fee to the IRS for processing it. They bring to the IRS all the necessary information to describe what had happened and address those and ask the IRS to forgive them. And if they take corrective action, and that's exactly what happened here. Is there anything in that process? The way that I read the record, they self-identified what they believed to be a problem. They self-selected a solution, presented it to the IRS and the IRS blessed it. I'm trying to figure out whether there's any place in there where the IRS said, yes, you're right, you have been in violation or whether we're inferring that because why would they have blessed this compliance agreement if it wasn't a violation in the first place? I think it's more than inferring. It would be difficult to understand that the IRS would say, you've got to do these things that you've said you're going to do. And sometimes they negotiate changes to the compliance, but it would be hard to imagine that they would say, cut this off if you didn't violate the law. That would certainly be an odd result. Let me, if I can go to my second point, is that the benefit that the plaintiffs are trying to obtain here is plain and simple illegal. The IRS made that clear in various opinion letters and private letter rulings, and particularly in this VCP. And I might add that in the Meekin case, which is almost identical to this case, although there were far more participants that had taken advantage of this benefit, had applied for VCP and the IRS said, yes, we understand you have to make the correction, same correction that they approved in our case. That the benefit is illegal was certainly made clearer by the Consolidated Appropriations Act of 2021, which we discussed briefly in our brief, the Vested Employee Benefit Protection Act, which said for certain pension plans, actually it was for the St. Louis Carpenters, you could make a distribution, an in-service distribution to participants as early as age 55, if you qualify. We don't qualify, but of course that law wouldn't be necessary if you could provide this benefit. The other point is, in that regard, is that the code, that the code doesn't permit this, which is emphasized in a recently Q&A posted on the IRS webpage. If you Google coronavirus-related relief to retirement plans and IRAs questions and answers, you come up with this. And what they said was, you have to have a bona fide retirement. Well, what they're referring to is all their prior rulings that say for an early retirement to be bona fide, and those are the words they use, you have to retire with an intention not to go back to work. And they said, if you're rehired after you've taken one of those legitimate retirements due to unforeseen circumstances that do not reflect any prearrangement to rehire, that's okay. And the example they gave, of course, is a very timely one, which is COVID-19 pandemic. You retire, you don't have an intention to go back, and the employer calls you up and says, my God, we don't have enough employees. Can you come back and work for us? So I think that's another example that makes it clearer that the IRS takes the position that these retirements are not legal. And if it's not legal, then you can't accrue the benefit. Certainly, if a plan let participants retire at age 54, and I don't think anybody disagrees that the IRS prohibits retirements at age 54, if the fund had been letting that happen, that would not be an accrued benefit because it's illegal. The question that I'm still struggling with is that you can't provide the benefit down to the age of 55 for people who have not left employment or not retired. That doesn't seem controversial, but what we're trying to figure out is what it means to retire. In the context of a multi-employer pension plan, where contributing employers have employment as defined by the plan, but then also have employment that's not included within the plan, and whether leaving employment from the plan is retirement or whether it's not. And I'm not finding anything in these IRS rulings that really tells us anything about that. Is there something that deals specifically with the multi-employer? Yes, there is. And it's in the ERISA regulations. It's cited at page 26 of our brief. It's 29 CFR 2530, et cetera, but it's in the brief. What that requires is that a multi-employer plan like this plan continue to credit participants contiguous employment from contributory employment to non-contributory. The key word is contiguous. If you leave employment and actually retire and then go to work for the same employer in non-contributory services, this rule does not come into play. The IRS and ERISA, the Department of Labor, takes the position that employment with any employer that's a contributing employer is, any of them is employment under the terms of the plan. So that's the provision that I think the IRS and ERISA and the Department of Labor relies on. And as I've said, I pointed out the Department of Labor, I'm sorry, the Internal Revenue Code Service certainly took the position here that what happened was not proper. And the problem, I know I'm out of time, let me just sum up with, the problem is nobody, no statutes, regulations directly defined what retirement. This plan said retire, didn't say anything more. But now we know the IRS and the Department of Labor takes the position for early retirements that you have to stop working with the intention not to continue to work. You go back to work if some unexpected circumstance arises. Does that answer your question, Judge Robinson? Yeah, the provision that you cited does specifically accept the scenario in which retirement occurs. That severs the contiguity if I'm reading that provision right. And so it doesn't really, we're chasing our tail a little bit and asking the question of what the IRS understands to retirement to mean. And I don't see that that provision really helps us answer it because that exception is baked right in. And so that's why I'm struggling, especially when the terms of the contract, the plan itself are very clear as to what employment means. And it's defined with respect to participation in employment covered by the collective bargaining agreement. Thank you. If anybody has any further questions, I'd be happy to respond. If not, I'll go on mute. Yeah, I mean, I wasn't trying to give a speech there. I'm sorry, is there a response to the thing I just said? Well, the answer is that the IRS and all in these two VCPs, the one in this case, in the Meakin case, reviewed all these facts, understood what was happening, understood that these individuals went to work in contiguous non-contributory service. And the IRS said, you got to stop doing that. You can't permit that. That's what they said. Stop it. Don't do it again. And tell us in 150 days, tell us that you've complied with it. Thank you. Okay, let's just show the questions. Thank you, counsel. We'll hear a rebuttal, three minutes of rebuttal. Thank you, Judge. I think the best evidence of what the IRS means by in-service and separation from service is the St. Louis Carpenter's case, which was brought to the court's attention first in the defendant's brief. There, they were allowing people upon age and service, satisfying age and service, to begin taking a distribution of early retirement benefits without leaving covered employment, without leaving plan-based work. That's an in-service distribution. And instead of disqualifying the plan, the IRS worked with St. Louis and said two very important things. Hey, you have to change your plan prospectively because you can't do this. And so they made them put in a provision of the plan that said a retirement is a separation from covered employment. That is in the notice that is attached to our reply brief as an addendum. They literally said you cannot continue to work in covered employment prospectively. The second most important thing is that the IRS, because of ERISA's and the code's anti-cutback provisions, allowed people who had worked and accrued benefits under the plan prior to the amendment to still have the right to take their in-service distribution because Title I of ERISA supersedes Title II. Tax code does not take precedent over employee protections that ERISA was designed and implemented to protect. As far as Maltese and Meekin, those cases are entirely different because the plan terms there literally required in Maltese, the employee had to stop working for- For all contributing employers. Somebody, could you please mute? Make sure if you're not arguing right now to mute yourself. Sorry about that. Sorry. So in Maltese, the participants, in order to be considered retired under the terms of the plan had to separate from all employment with a contributing employer for 30 days. That's what the plan said. Plan didn't say that here. In Meekin, they had to completely withdraw from any and all activity in the building and construction industry before being considered retired. Plan didn't say that here. I mean, what these cases show is that the plan terms control. What the plan says a retirement is, is what the retirement is. And those are the benefits that have to be paid. And in the St. Louis carpenters case, the IRS demonstrates that even where payment of those benefits might violate the tax code and might jeopardize the tax status, if they're accrued benefits, they have to be paid. And any changes that the plan wants to make can only be done on a prospective basis. I used up all my time in the beginning. If the court has any questions. Thank you, counsel. We'll take the case under advisement. Thank you.